# United States Court of Appeals
## For the First Circuit

No. 21-1095

EMILY FORSYTHE,

Plaintiff, Appellant,

v.

WAYFAIR INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Kayatta, Selya, and Barron,
Circuit Judges.

Robert E. Goodman, Jr., with whom Kilgore & Kilgore, PLLC was
on brief, for appellant.
Lynn A. Kappelman, with whom Dawn Reddy Solowey and Seyfarth
Shaw LLP were on brief, for appellee.

February 28, 2022

**BARRON, <u>Circuit Judge</u>**. Emily Forsythe appeals from the grant of summary judgment to her former employer, Wayfair, an online home furnishings company with a principal place of business in Massachusetts, on the federal and Massachusetts state law employment discrimination claims that she brought against it. We affirm in part and reverse in part.

## I.

In recounting the travel of the case, we begin with a preliminary review of the events that precipitated Forsythe's suit against Wayfair, based on facts that are not in dispute. We then briefly recount the relevant procedural history.

## A.

Forsythe began working at Wayfair in January 2017 as a senior manager. She was still employed there on August 14, 2019, when she sent an email to Matt Witte, her former direct manager who by that time had assumed a different supervisory position at the company.

The email described inappropriate conduct towards Forsythe by a coworker, Michael McDole, who was not Forsythe's supervisor. The email alleged:

(1) In January 2019, during an in-person meeting at Wayfair's Perris, California facility, McDole moved his chair next to Forsythe and placed his hand on her leg;

- 2 -

(2) In March 2019, during an in-person meeting at Wayfair's offices in Boston, Massachusetts, McDole again moved his chair next to Forsythe, so that his legs touched hers;

(3) In July 2019, at an in-person meeting -- again at Wayfair's Perris facility -- McDole touched the buttons "running up the front in the middle" of Forsythe's shirt and "a spot that was part of the shirt";

(4) Later that same day, McDole initiated a discussion with her about online dating applications and Forsythe's personal life and asked Forsythe about her dinner plans;

(5) On other occasions McDole communicated with Forsythe in an inappropriate manner, including by sending her aggressive, critical emails.

Four or five days after receiving the email, Witte "notified" Talent Management, Wayfair's human resources division, of the allegations against McDole. Witte did so by forwarding the email from Forsythe that set forth the allegations against McDole. Thereafter, an employee from Talent Management, Trevor Shaffer-Figueroa, began an investigation into Forsythe's allegations in the email.

After completing that investigation, Shaffer-Figueroa told Forsythe on September 16, 2019 that the allegations were

unsubstantiated. The next day, on September 17, 2019,[1] Forsythe emailed Shaffer-Figueroa and alleged that another employee at the company, Kory McKnight, who had become Forsythe's direct supervisor as of August 5, 2019, threatened to "get[] [her] off his team." Forsythe stated in the email: "As Kory is aware of my complaint to HR and the allegations I made against Michael McDole, I feel that I am being retaliated against due to my complaint of harassment and sexual harassment."

On Thursday, September 19th, Shaffer-Figueroa informed Forsythe over the phone that he was unable to substantiate her allegation that McKnight had retaliated against her. Forsythe then told Shaffer-Figueroa during that phone call (which she recorded): "I would be very interest[ed] in having you talk to Candice [Smith] and your team and putting together a compelling severance package."

Immediately after that conversation, Shaffer-Figueroa called Candice Smith, Wayfair's Director of Talent Management for field locations, and informed her about the call with Forsythe. That day or the following day, Smith discussed Forsythe's situation with both her "boss," Marcy Axelrad, and Wayfair's in-house

_____

[1] Forsythe's briefing states that she complained of retaliation on September 19, but in support cites to Forsythe's deposition testimony that she complained on September 17.

counsel, Mike Berendt.[2] Shaffer-Figueroa also discussed Forsythe's request regarding a severance package with Berendt on Friday, September 20th, and in the days thereafter.

Forsythe took paid time off on Friday the 20th, and she checked work-related emails that day and over the following weekend. She planned to take a business trip to Atlanta on Tuesday, September 24th.[3]

On Monday, September 23, 2019, Shaffer-Figueroa sent Forsythe an email in which he "indicat[ed] that [Wayfair] had accepted her resignation." That email had a severance agreement attached to it. Forsythe did not go on the business trip she planned to take on the 24th.

On or after September 23, Berendt informed McKnight and Witte that Forsythe had resigned. Forsythe's last day at Wayfair was either September 23 or 24, 2019.

**B.**

On October 2, 2019, Forsythe filed a charge against Wayfair with the U.S. Equal Employment Opportunity Commission ("EEOC"), for joint filing with the Massachusetts Commission

---

[2] The record spells the surname of Wayfair's internal counsel as "Berendt," "Behrendt," and "Barent." We use the spelling provided by Shaffer-Figueroa during his deposition.

[3] The question posed to Forsythe in her deposition refers to "the last day that [she] w[as] at Walmart," which we treat as a slip of the tongue intended to refer to Wayfair.

- 5 -

against Discrimination.  The charge claimed sexual harassment, other sex discrimination, and retaliation based on the events described above that had occurred up to September 19, 2019.

On December 16, 2019, Forsythe filed a second charge of discrimination against Wayfair in the same fora.  This charge alleged sex discrimination based on the events that took place after September 19, 2019 and through what she alleged was her involuntary termination -- rather than resignation -- from employment at the company.

Forsythe received a notice of right to sue from the EEOC with respect to both charges.[4]  On January 3, 2020, Forsythe sued Wayfair in the District Court for the District of Massachusetts.[5] She brought claims under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and Chapter 151B, §§ 4.1, 4.4, and 4.4A of the Massachusetts General Laws.

Wayfair moved for summary judgment on November 6, 2020, as to all of Forsythe's claims.  The District Court granted the motion.  Forsythe v. Wayfair, LLC, No. CV 20-10002, 2021 WL 102649,

---

[4] Although Forsythe alleges in her complaint that she received a notice of right to sue from the EEOC with respect to both charges she filed with it, Wayfair denies this allegation in its answer. The parties do not appear to have taken further steps to develop or contest this factual allegation and so we set it forth as undisputed for purposes of this appeal.

[5] Forsythe filed an amended complaint on February 13, 2020.

at *1 (D. Mass. Jan. 12, 2021).  Forsythe then timely filed this appeal.

## II.

We first address Forsythe's challenge to the District Court's grant of summary judgment to Wayfair on her state and federal claims that seek to hold the company liable for its allegedly negligent failure to remedy McDole's sexual harassment of her.  The District Court granted summary judgment to Wayfair on these claims on two independent grounds.  Reviewing de novo, see Murray v. Kindred Nursing Ctrs. W. LLC, 789 F.3d 20, 25 (1st Cir. 2015), we uphold the District Court's grant of summary judgment to Wayfair on these claims.

### A.

Although Forsythe brings claims against Wayfair for negligently failing to remedy McDole's sexual harassment of her under both Title VII and Massachusetts's anti-discrimination law, she does not dispute that if her claim in that regard under Title VII cannot survive summary judgment, then neither can her state law version of it.  We thus focus on her Title VII claim.

To defeat summary judgment on the Title VII claim, Forsythe must show that the record contains evidence from which a reasonable juror could find:

> (1) that she . . . is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was

based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Ponte v. Steelcase Inc., 741 F.3d 310, 320 (1st Cir. 2014) (quoting Forrest v. Brinker Int'l Payroll Co., 511 F.3d 225, 228 (1st Cir. 2007)).

The District Court ruled first that Forsythe's attempt to defeat summary judgment on this claim failed under the fourth prong of the test because the nature of McDole's alleged conduct was such that, as a matter of law, it did not constitute severe or pervasive sexual harassment. Forsythe, 2021 WL 102649, at *5; see Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (holding that Title VII covers only "[c]onduct . . . severe or pervasive enough to create an objectively hostile or abusive work environment"). The District Court also granted summary judgment to Wayfair on her Title VII claim on the separate ground that, as a matter of law, Forsythe failed to establish a basis for employer liability. Forsythe, 2021 WL 102649, at *5. It is on this second ground that our opinion rests.

**B.**

In ruling that Forsythe had not established a basis for employer liability, the District Court explained that McDole was a nonsupervisory coworker of Forsythe and that Forsythe was suing Wayfair, as her employer, rather than McDole. It further explained that Wayfair could be liable under Title VII based on McDole's alleged sexual harassment of Forsythe "only . . . if the harassment is causally connected to some negligence on" Wayfair's part. Id. (quoting Noviello v. City of Boston, 398 F.3d 76, 95 (1st Cir. 2005)); see also Coll.-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination, 508 N.E.2d 587, 593 (Mass. 1987) ("An employer is liable [under Massachusetts law] for sexual harassment in the workplace if the employer is notified of the condition and fails to take adequate steps to remedy the situation.").

The District Court then considered whether the record provided a supportable basis upon which a reasonable juror could find that Wayfair "knew or should have known about the harassment, yet failed to take prompt action to stop it." Forsythe, 2021 WL 102649, at *5 (quoting Noviello, 398 F.3d at 95). As to that issue, the District Court held, the record would not permit a reasonable juror to so find. More specifically, the District Court concluded:

- 9 -

> [Forsythe] does not offer any evidence that investigators acted in bad faith or failed to consider any relevant information. She merely asserts, without any support in the record, that Shaffer-Figueroa's determination was "based largely, if not exclusively, upon McDole's denial," despite voluminous evidence in the record that Shaffer-Figueroa weighed the testimony of several colleagues familiar with the relationship between . . . Forsythe and McDole, the content and tone of emails Forsythe alleged to be aggressive and bullying, and the wavering inconsistencies in Forsythe's versions of events over time. The court accordingly will enter judgment for Wayfair on these [sexual harassment] claims.

Id. (internal citations omitted).

Forsythe's allegations in her email to Witte regarding McDole included allegations that McDole not only verbally harassed her but also inappropriately touched her. Shaffer-Figueroa investigated the allegations concerning the verbal harassment as distinct from her allegations about McDole's inappropriate touching. Forsythe does not argue to us that the alleged verbal harassment by McDole in and of itself can establish a predicate hostile environment that Wayfair could be held liable for failing to remedy. She thus appears to accept the necessary premise of the District Court's ruling: that Wayfair is not liable under Title VII for failing to remedy the alleged sexual harassment of her by McDole if Wayfair conducted a reasonable investigation into the allegations about him and concluded that the allegations regarding McDole's inappropriate touching could not be substantiated. See

- 10 -

Vance v. Ball State Univ., 570 U.S. 421, 427 (2013) ("[A]n employer is directly liable for [a non-supervisory] employee's unlawful harassment if the employer was negligent with respect to the offensive behavior." (citing Faragher v. City of Boca Raton, 524 U.S. 775, 789 (1998))).

Forsythe also does not dispute that her sexual harassment-based claim against Wayfair under Title VII hinges on whether Wayfair reasonably investigated the allegations regarding the inappropriate touching by McDole. Thus, her challenge to the District Court's summary judgment ruling necessarily turns on the strength of her contention that a reasonable juror could find that the investigation that Shaffer-Figueroa conducted was so deficient that it would not permit Wayfair to rely on its finding that the alleged inappropriate touching could not be substantiated.[6]

We are cognizant of the jury's role in assessing factual questions about the adequacy of an employer's investigation into alleged sexual harassment. But, although Forsythe contends that the District Court invaded the jury's province in ruling as it did, we are not persuaded.

Forsythe contends to us, as she contended below, that part of the reason why a juror supportably could find Shaffer-

---

[6] Forsythe objected to use of Shaffer-Figueroa's conclusion as summary judgment evidence on the grounds that it constituted "improper lay opinion under [Federal Rule of Evidence] 701 and . . . hearsay under [Federal Rule of Evidence] 801."

Figueroa's investigation deficient was because it assessed the allegations concerning McDole's inappropriate touching by relying solely on McDole's denials of those allegations, notwithstanding the evident reasons to disbelieve him. Cf. Hathaway v. Runyon, 132 F.3d 1214, 1224 (8th Cir. 1997) ("It is not a remedy for the employer to do nothing simply because the coworker denies that the harassment occurred . . . ."). Forsythe points out that the record shows that McDole did admit to Shaffer-Figueroa that he discussed dating applications with Forsythe and invited her to lunch, and she contends that a reasonable juror could find on this record that Shaffer-Figueroa had reasons to question McDole's credibility in denying the incidents involving the alleged inappropriate touching, especially given the aspects of her allegations that he admitted. Yet, Forsythe argues, the record shows that Shaffer-Figueroa found, following McDole's denials, that her allegations regarding the inappropriate touching could not be substantiated.

It does not follow from what we have just described, however, that a juror reasonably could find that Shaffer-Figueroa's investigation into the alleged physical harassment was too deficient for Wayfair to rely on its findings. This is not a case in which, with respect to the allegations of inappropriate touching, the investigation involved the employer choosing to do nothing more than ask the accused about those allegations and then

- 12 -

credit self-serving denials. The record shows without dispute that Shaffer-Figueroa asked Forsythe whether there were any eyewitnesses to the alleged incidents of inappropriate touching and that she said that there were none. Forsythe also does not argue -- nor could she argue -- that the record shows that Shaffer-Figueroa ever declined to interview any witness whom Forsythe herself had identified as having relevant information as to those incidents.

In fact, Forsythe herself acknowledges that Shaffer-Figueroa spoke during the investigation to "one other employee . . . about the nature of [McDole and Forsythe's] relationship," and the record shows without dispute that Shaffer-Figueroa found that employee, Brittaney Skaggs, did not substantiate the contention that McDole "had been suggestively inappropriate or flirtatious with [Forsythe]."[7] Nor, on this record, do we see how a reasonable juror could find that Shaffer-Figueroa's credibility assessment of McDole was itself so lacking in support that the company acted unreasonably in relying on his investigation's finding that the allegations of inappropriate touching were "unsubstantiated."

---

[7] Forsythe asserts that "there were inaccuracies in Shaffer's notes concerning his conversations with Skaggs," but she does not cite support for this assertion, nor does she specify what those inaccuracies were.

Forsythe does assert that investigative steps that Shaffer-Figueroa undertook were deficient in other respects. But, in the main, none of those assertions identifies evidence in the record from which a reasonable juror could find that Shaffer-Figueroa reached his conclusion about the allegations concerning inappropriate touching based on an investigation into them too deficient for Wayfair reasonably to rely upon. That is either because the record does not in fact support her contentions about the ways in which those aspects of the investigation fell short, or because those contentions concern alleged flaws in the investigation that simply do not bear on the investigation into the incidents involving the alleged inappropriate touching.

But, one of the claimed deficiencies does merit more extended consideration -- Forsythe's contention, which Wayfair does not dispute, that neither Shaffer-Figueroa nor anyone else at the company asked her whether anyone who did not work there could corroborate her allegations about the inappropriate touching. Forsythe emphasizes that the record shows that if she had been asked that question, she could have identified a friend who could have confirmed that Forsythe contemporaneously reported to her the incidents involving the inappropriate touching by McDole that Forsythe's email to Witte alleged.

The record conclusively shows, however, both that Shaffer-Figueroa followed up with every potential witness that

Forsythe herself identified to him and that no meaningful lead emerged during the investigation that he (or anyone else at Wayfair) failed to pursue. Nor is there anything in the record that would suggest that the investigation was conducted in a manner that indicated that the company would not have followed up if Forsythe had volunteered that she had a means of corroborating any of her allegations based on the contemporaneous account that she claims that she gave to someone not employed at Wayfair.[8]

Thus, Forsythe is necessarily asserting that the failure by Wayfair's investigator (or anyone else at the company) to have affirmatively asked her for corroboration for her allegations in the form of a contemporaneous report to someone who did not work at Wayfair in and of itself sufficed to permit a reasonable jury to find that the investigation into those allegations was inadequate. Forsythe identifies no authority, though, from this or any circuit -- nor are we aware of any -- to support the proposition that an investigation may reasonably be deemed inadequate whenever (and merely because) an employer fails to ask a complainant whether she provided a contemporaneous account to anyone outside the workplace.

---

[8] In fact, Shaffer-Figueroa's notes indicate that, when he "shared that the allegations of inappropriate physical contact [were] found to be unsubstantiated," he "asked Emily [Forsythe] if she had any additional witnesses or evidence to support her allegations. Emily indicated that she did not."

That is not to say that it is prudent for an employer to investigate alleged sexual harassment without affirmatively asking the complainant whether she is aware of any such external corroboration. But, nothing in this record suggests that Wayfair communicated to Forsythe, even implicitly, that she was not free to volunteer that such corroboration existed or that it would have been futile for her to have done so. We thus cannot say that a juror reasonably could find that this investigation -- which, as we have explained, a reasonable juror could not find was otherwise inadequate -- was rendered inadequate because Forsythe was not affirmatively asked for the external corroboration that she did not volunteer.[9]

## c.

For these reasons, we conclude that the District Court did not err in granting summary judgment to Wayfair on Forsythe's Title VII claim against it for failing to remedy sexual harassment of her by a coworker. We thus also conclude that the District Court did not err in granting summary judgment to Wayfair on the parallel claim that Forsythe brought against the company under

---

[9] Forsythe also argues that the District Court, in ruling against her on her sexual harassment claims, wrongly determined that her testimony regarding the conduct to which McDole subjected her was inconsistent and wrongly dismissed her objections to pieces of Wayfair's summary judgment evidence on which our analysis does not turn. But, even if she is right in so contending, it is of no moment, given that the record is wanting with respect to the alleged inadequacy of the investigation.

Massachusetts law.  See Noviello, 398 F.3d at 95 ("When coworkers, rather than supervisors, are responsible for the creation and perpetuation of a hostile work environment, Title VII and chapter 151B seem essentially coterminous as they relate to employer liability.").

## III.

We now turn to Forsythe's challenge to the District Court's grant of summary judgment to Wayfair on her retaliation claims under federal and state anti-discrimination law.  To the extent that Forsythe can defeat Wayfair's motion for summary judgment on her Title VII retaliation claim, she necessarily also can defeat the company's motion for summary judgment on her state anti-discrimination law claim for retaliation.  See Mole v. Univ. of Mass., 814 N.E.2d 329, 338 (Mass. 2004).  We thus again focus our analysis on whether Forsythe showed what she must to defeat summary judgment on her Title VII claim, as we conclude that, contrary to the ruling of the District Court in granting summary judgment to Wayfair on that claim, she has made the requisite showing to defeat Wayfair's motion for summary judgment on it.

## A.

To determine whether Forsythe's retaliation claim under Title VII can survive a motion for summary judgment, we use a three-step burden-shifting framework drawn from McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under this framework,

Forsythe must first make out a prima facie case of retaliation. See Ponte, 741 F.3d at 321.   To do so, she must show that a reasonable juror could find "that she engaged in protected conduct, that she suffered an adverse employment action, and that a causal nexus exists between the protected activity and the adverse action."  Id.

If Forsythe can make such a showing, the burden of production then shifts to Wayfair, which must articulate a "'legitimate, non-retaliatory' reason" for its challenged adverse action.  Id. at 323 (quoting Alvarado v. Donahoe, 687 F.3d 453, 458 (1st Cir. 2012)).   If Wayfair offers a legitimate, non-retaliatory justification for the adverse action, then Forsythe must show in turn that a reasonable juror could find that Wayfair's "proffered reason was mere pretext" for retaliation.  Id.

On appeal, Forsythe rests her challenge to the District Court's grant of summary judgment on her Title VII claim for retaliation -- at least in any developed way[10] -- on the following

---

[10] In a footnote of her brief, Forsythe also alleges that "McKnight's threat was clearly actionable as retaliation under Burlington Northern & Santa Fe Railway Company v. White, 548 U.S. 53 at 67-70 (2006)."  She did not raise this argument below, and the District Court did not address it.  The argument is therefore waived.  See United States v. Slade, 980 F.2d 27, 30 (1st Cir. 1992) ("It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals."); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[W]e see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

understanding of the claim: that she was terminated from her employment at Wayfair in retaliation for her having engaged in protected conduct by complaining about both McDole's misconduct and McKnight's alleged threat to replace her. The District Court granted summary judgment to Wayfair on that claim on three independent grounds: (1) that the record showed that, as a matter of law, she had not been terminated but instead had tendered an offer to resign that Wayfair accepted, Forsythe, 2021 WL 102649, at *6, and so could not meet the "adverse employment action" element of the prima facie case; (2) that, even assuming that a reasonable juror could find on this record that Forsythe had been subjected to an adverse employment action, no reasonable juror on this record could find the causal link that she alleged between her termination and her protected conduct, id.; and (3) that with respect to the pretext portion of the inquiry, Wayfair had articulated a legitimate reason for her termination -- a "good faith, even if mistaken, interpretation of her request for a severance package as an offer of resignation" -- and that Forsythe had offered no evidence from which a reasonable jury could infer that reason was pretextual. Id.[11] For the reasons that we will

---

[11] The District Court only discussed this holding in its analysis of Forsythe's discrimination claims. Id. However, both parties on appeal address this analysis by presenting pretext arguments for both Forsythe's retaliation and discrimination claims.

next explain, we conclude, reviewing de novo, see Murray, 789 F.3d at 25, that none of these grounds supports the grant of summary judgment to Wayfair on this claim.

**B.**

We start with the District Court's ruling that the record provides no basis for finding that Wayfair terminated Forsythe's employment at the company involuntarily and thus that she cannot satisfy the "adverse employment action" element of the prima facie case for a Title VII retaliation claim. To do so, it is necessary first to describe in some detail the portions of the record that are relevant to this aspect of the District Court's ruling. We then turn to our reasons for reaching a different conclusion from the District Court.

**1.**

The record supportably shows the following facts. On Thursday, September 19, 2019, Shaffer-Figueroa called Forsythe to inform her that he could not substantiate her retaliation complaint. The call was recorded and transcribed; the parties do not dispute the accuracy of the transcript. The pertinent section of the transcript reads:

> EMILY FORSYTHE: . . . I would be very interesting [sic] in having you talk to Candice and your team and putting together a compelling severance package. I would really be interested in pursuing that . . . . I think that would be the best path forward for me.

- 20 -

TREVOR SHAFFER-FIGUEROA: And obviously, I can't commit anything now or even talk about whether that's even an option, but I can certainly present your request. What does "compelling" mean?

EMILY FORSYTHE: You guys start, and then I'll have my lawyer work with you at that point.

TREVOR SHAFFER-FIGUEROA: I can certainly bring that request forward. Obviously, I can't make any promises. That would just be something that I could share that this is being sought and requested and kind of see where things go from there.

Immediately after this conversation concluded, Shaffer-Figueroa called Candice Smith and informed Smith about the call with Forsythe. That day or the following day, Smith had a conversation about Forsythe with Marcy Axelrad, the Director of Talent Management for North America, and Wayfair's internal counsel, Mike Berendt. Between the 19th and the 24th, Shaffer-Figueroa also spoke with Berendt about Forsythe. Wayfair's counsel instructed Smith and Shaffer-Figueroa in their depositions not to discuss the contents of these conversations due to attorney-client privilege.

On September 20th, Forsythe requested a paid day off and did not go into the office. That day and over the weekend, she checked work-related emails and expected to take a business trip to Atlanta on Tuesday, September 24. On Monday, September 23, however, Shaffer-Figueroa sent Forsythe an email that contained

what Forsythe referred to in her deposition as a "separation agreement." The email, according to Shaffer-Figueroa's description of it in his deposition, "indicat[ed] that [Wayfair] had accepted her resignation" offer of September 19.

Forsythe explained that she did not take the business trip she had planned for the 24th because "[t]he night before I was supposed to leave Shaffer[-Figueroa] told me I was terminated." There is no direct evidence that Wayfair specifically instructed Forsythe not to travel to Atlanta on September 24th.[12]

On or after September 23, Berendt informed McKnight and Witte -- Forsythe's direct supervisor and her former supervisor, respectively -- that Forsythe had resigned. The record does not indicate that Forsythe objected contemporaneously to Wayfair's purported acceptance of her resignation.

**2.**

The District Court ruled that, on this record, it is indisputable that Forsythe resigned and so was not terminated.

---

[12] Shaffer-Figueroa testified that he did not know that it was ever communicated to Forsythe that she should not take the trip to Atlanta. Smith testified that a decision to tell Forsythe not to go to Atlanta was "part of [Smith's] conversation with [in-house counsel]," but immediately thereafter testified that she in fact did not know prior to Tuesday the 24th that Forsythe had had a business trip scheduled for that day. When asked by Forsythe's counsel, "Somebody said [to Forsythe], 'Do not go to Atlanta; you're fired?'", McKnight testified, "I believe so. I can't say that, no," and did not say he knew that someone told Forsythe not to go to Atlanta.

The District Court reasoned that "[n]o reasonable juror could find that Forsythe's explicit request for a severance package amounted to anything other than a voluntary offer to resign, whatever her later regret." Forsythe, 2021 WL 102649, at *6. We cannot agree.

A reasonable juror could find on this record that Forsythe did not offer to resign while inquiring about a severance package during the September 19 phone call. In addition, precisely because Forsythe had not made an offer of resignation for Wayfair to accept, a reasonable juror could find that she reasonably construed Shaffer-Figueroa's email purporting to accept her resignation on September 23rd as an involuntary termination that required no clarification.

The transcript of the September 19 phone call between Forsythe and Shaffer-Figueroa shows that, although she clearly requested a severance package proposal and expressed concerns about continuing to work at the company, she at no point stated that she was putting forward an offer to resign that was capable of acceptance. Indeed, the transcript supportably shows, instead, that she informed Shaffer-Figueroa that she was asking for a proposal regarding severance that, with the aid of her lawyer, she would evaluate upon receipt.

This understanding of what Forsythe had represented to Shaffer-Figueroa during the September 19 phone call draws additional support from Shaffer-Figueroa's deposition testimony.

When asked, "You had no expectation when you set up [the meeting to tell Forsythe that Wayfair had accepted her resignation] that Ms. Forsythe was going to agree that she had resigned, did you?" Shaffer-Figueroa replied, "I had no idea."

True, the email purporting to accept the supposed offer to resign does not appear to be in the record, and the record provides scant information about what exactly Forsythe did in the days following September 23rd. But, given that a reasonable juror could find on this record that Forsythe had never offered to resign and had merely inquired about a severance package, we conclude that a reasonable juror also could find that Forsythe reasonably understood Wayfair's September 23 email purporting to accept her offer to resign as an involuntary termination of her employment rather than an innocent misinterpretation of her earlier request.

Accordingly, we cannot agree with the District Court that, as a matter of law, Forsythe resigned and so for that reason was not subject to an adverse employment action. Rather, we conclude that the record provides a supportable basis for concluding that even though she had never made an offer to resign, she was treated as if she had and thereby terminated from her employment against her wishes.[13]

---

[13] Forsythe's briefing additionally implies that "a decision by Wayfair to advise . . . that she should not [travel to Atlanta]" constituted "a communication of involuntary termination." Because

- 24 -

## c.

The District Court separately held that, even assuming that Wayfair had involuntarily terminated Forsythe's employment at the company, she failed as a matter of law to establish a "causal[] link" between the termination and any protected activity and so cannot meet that element of the prima facie case. Forsythe, 2021 WL 102649, at *6. But, once again, we cannot agree.

The record supportably shows that Forsythe complained to Wayfair of sexual harassment on August 19th and of retaliation on September 19th, a Thursday, and that on Monday, September 23rd, Wayfair sent her the message that marked the end of her employment. Given that the decisionmakers at Wayfair who allegedly terminated Forsythe's employment involuntarily were aware of her protected conduct, the temporal proximity between the protected conduct and the alleged involuntary termination of her employment establishes a basis upon which a reasonable juror could find the requisite "causal connection" between the former and the latter. See Calero-Cerezo v. DOJ, 355 F.3d 6, 25-26 (1st Cir. 2004) (noting, in case involving adverse employment action "roughly a month" after

---

Forsythe has cited no evidence that Wayfair actually communicated to her that she should not travel to Atlanta on September 24 -- though she identifies some equivocal evidence that Wayfair made a decision to so communicate -- we do not consider whether the evidence in the record would provide a supportable basis for finding that her employment had been involuntarily terminated on the basis of such a communication.

- 25 -

defendant employer was informed of protected activity, that "a showing of discharge soon after the employee engages in an activity specifically protected by . . . Title VII . . . is indirect proof of a causal connection between the firing and the activity because it is strongly suggestive of retaliation" (omissions in original) (quoting Oliver v. Digital Equip. Corp., 846 F.2d 103, 110 (1st Cir. 1988))); Wright v. CompUSA, Inc., 352 F.3d 472, 474-75, 478 (1st Cir. 2003) (holding, under the Americans with Disabilities Act, that "a reasonable juror could infer . . . retaliatory motives" when an employer terminated an employee six days after his return from medical leave and the record did not "undercut" causation).

### D.

We come, then, to what the parties treat as the District Court's no-pretext-based ground for granting summary judgment to Wayfair on her retaliation claim under Title VII. Here, the District Court based its ruling on the determination that Wayfair asserted that it reasonably believed that Forsythe offered to resign and that Forsythe failed to point to evidence in the record that could suffice to show that Wayfair's assertion in that regard was pretextual. See Forsythe, 2021 WL 102649, at *6.

In order to survive Wayfair's motion for summary judgment on her retaliation claim, it is not enough for Forsythe merely to make out a prima facie case. She must show that there

is a supportable basis for a juror to conclude, by a preponderance of the evidence, that Wayfair took an adverse employment action against her in retaliation for her protected conduct. See Ponte, 741 F.3d at 323. Wayfair contends that Forsythe cannot do so -- even if she can supportably make out a prima facie case of retaliation -- because she has failed to show what she must with respect to pretext. We do not agree.

To make out a supportable case that Wayfair's proffered reason for ending her employment was a pretext for retaliation, it is not enough for Forsythe "to 'impugn the veracity' of" Wayfair's stated reason for doing so -- namely, that it was merely accepting her offer to resign. Id. (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991)). Instead, she "must proffer specific facts that would enable a reasonable factfinder to conclude that the employer's reason for termination was a 'sham' intended to cover up the employer's true motive." Id. On this record, given that Forsythe has made out a supportable prima facie case of retaliation, by supportably showing Wayfair's proffered reason to have been a "sham," she then would have provided a juror with a reasonable basis for finding that the reason Wayfair gave for terminating her employment was a pretext for retaliation. Moreover, one way in which a plaintiff can establish that an employer's proffered explanation was a pretext to conceal its true motives is the way that Forsythe has supportably done so here: by

showing that the employer's explanation is not just wrong, but that it is so implausible that the employer more likely than not does not believe it. See Collazo-Rosado v. Univ. of Puerto Rico, 765 F.3d 86, 93 (1st Cir. 2014).

In so concluding, we may assume that Wayfair's assertion that it was accepting what it understood to be Forsythe's offer of resignation constitutes a legitimate, non-retaliatory explanation for terminating her employment, notwithstanding Forsythe's contention that "Wayfair[] fail[ed] to meet its burden of establishing a legitimate non-discriminatory ground for termination." Even if that is so, Forsythe is still right that a juror reasonably could find on this record that this explanation for such an involuntary termination of her employment was so implausible that Wayfair more likely than not did not believe it.

As we have explained, Wayfair acknowledges that the offer to resign by Forsythe that it purported to accept was the offer that it contends that she put forth during her September 19 phone call with Shaffer-Figueroa. Wayfair does not suggest that she communicated such an offer at any other point in time. That poses a problem for Wayfair, however, because the transcript of that phone call reveals that she did not state that she was in fact offering to resign at any point during it.

To be sure, Forsythe did express concerns, according to the transcript, about continuing to work at the company, given

what she alleged was McKnight's conduct towards her.  And, after having done so, the transcript shows, she did then request for Shaffer-Figueroa to "talk to Candice and your team and put[] together a compelling severance package," noting, "I would really be interested in pursuing that . . . .  I think that would be the best path forward for me."

But, Forsythe also stated, "You guys start, and then I'll have my lawyer work with you at that point," without indicating that she had made an offer to resign that could be accepted by merely delivering a severance package of Wayfair's own design.  Nor does the transcript indicate that Shaffer-Figueroa understood Forsythe to be offering to resign during that call, either right then and there or contingent upon her mere receipt of a severance package that Wayfair unilaterally deemed sufficient to satisfy her request that it be "compelling."  Instead, Shaffer-Figueroa during the phone call repeatedly referred only to Forsythe's "request" for a proposed severance package without adverting to her having made any offer to resign.  And, consistent with the notion that Forsythe had not put such an offer on the table during that call and that Shaffer-Figueroa did not understand her to have done so, he testified in his deposition that he had no idea how she would respond to the purported "acceptance" of her "resignation."

The record does contain testimony from Shaffer-Figueroa and Smith in their respective depositions that could support a finding that, following Shaffer-Figueroa's call with Forsythe, he told Smith only that Forsythe "was requesting a severance package," and that, according to Smith, "ask[ing] for severance[,] . . . in our world[,] is resigning." But, given that a transcript of the call between Forsythe and Shaffer-Figueroa is in the record, we conclude that a juror could reasonably find that an accurate description of what Forsythe communicated to Shaffer-Figueroa during that call was relayed to Smith.

Thus, the evidence in the record would permit a juror to find that Wayfair brought Forsythe's employment to an end based on her purported resignation when it knew she had not offered to resign. And, because, as we have already explained, a reasonable juror could find that Forsythe has made out a prima facie case of retaliation by supportably showing a causal link between her protected conduct and the alleged termination, her retaliation claim under Title VII may go forward. See Collazo-Rosado, 765 F.3d at 94; see also Tosca-Reynoso v. Prajapati, No. CV 18-11571, 2021 WL 1088124, at *3 (D. Mass. Feb. 10, 2021) (finding triable issue regarding pretext when the employer's understanding of a purported resignation was in dispute).

**E.**

Wayfair does not dispute that, insofar as it is not entitled to summary judgment on Forsythe's Title VII retaliation claim on any of the three grounds identified by the District Court, its grant of summary judgment to the company on that claim must be reversed. Nor does Wayfair dispute that if the District Court's grant of summary judgment to it on Forsythe's Title VII retaliation claim must be reversed, then so, too, must the District Court's grant of summary judgment to it on her state law retaliation claim. Accordingly, we reverse the District Court's grant of summary judgment on Forsythe's federal and state retaliation claims.

**IV.**

Forsythe's final set of challenges on appeal concerns the District Court's grant of summary judgment to Wayfair on her claims under state and federal anti-discrimination law of disparate treatment based on her gender in consequence of her termination from employment. The District Court held that these claims failed as a matter of law on two independent grounds, each of which was also at issue in connection with Wayfair's motion for summary judgment on her retaliation claims. The first ground is that "[n]o reasonable juror could find that Forsythe's explicit request for a severance package amounted to anything other than a voluntary offer to resign." Forsythe, 2021 WL 102649, at *6. The second ground is that, even assuming Forsythe's employment had

been terminated involuntarily, Wayfair articulated a legitimate reason for involuntarily terminating Forsythe's employment that she has failed to show a juror reasonably could find to be pretextual -- namely, that the company reasonably thought that she had offered to resign on September 19th and that it was merely accepting that offer, rather than terminating her employment against her will.  Id.

We begin with Forsythe's claim under Title VII, because the parties agree that if Wayfair is not entitled to summary judgment on that claim, then it also is not entitled to summary judgment on her state law version of it.  Our review is de novo. Murray, 789 F.3d at 25.

**A.**

To determine whether a plaintiff may defeat summary judgment on a gender-based disparate treatment termination claim under Title VII, we apply the McDonnell Douglas framework.  To make out a prima facie case for such a claim, the plaintiff must show that a reasonable juror could find "that (1) she was within a protected class, (2) [she] possessed the necessary qualifications and adequately performed her job, (3) but was nevertheless dismissed and (4) her employer sought someone of roughly equivalent qualifications to perform substantially the same work." Gómez-González v. Rural Opportunities, Inc., 626 F.3d 654, 662 (1st Cir. 2010) (alteration in original) (quoting

Rodriguez-Torres v. Caribbean Forms Mfr., Inc., 399 F.3d 52, 58 (1st Cir. 2005)); see also Blare v. Husky Injection Molding Sys. Bos., Inc., 646 N.E.2d 111, 115 (Mass. 1995) (stating similar four-element test). If the plaintiff can make that showing, the burden of production shifts to the employer at the second step of the analysis, as the employer must articulate a legitimate, nondiscriminatory reason for the termination. If the employer does so, then at the third stage of the inquiry, the plaintiff must show that a reasonable juror could find that the asserted reason for the termination is a pretext for discrimination.

We have already explained that the record does not support the District Court's determination that the record compelled the finding that Forsythe offered to resign. The District Court did not identify any other defect in Forsythe's prima facie case, see Forsythe, 2021 WL 102649, at *6, nor does Wayfair argue here that Forsythe failed to meet any other element of the prima facie case for this claim. We therefore conclude that Forsythe has shown what she must with respect to the prima facie case.

With respect to pretext, we have already explained that, contrary to the ruling by the District Court, a juror reasonably could find that Wayfair knew that its asserted reason for the termination of Forsythe's employment -- that the company reasonably thought that she had offered to resign and that it was

accepting that offer -- was not its real reason for bringing her employment to an end. Nonetheless, Wayfair contends that we must still affirm the District Court's grant of summary judgment on this Title VII claim because there is no basis for inferring gender-based animus in the decision to terminate Forsythe's employment, insofar as a juror reasonably could find that Wayfair had terminated it. See Ponte, 741 F.3d at 323.

A showing that a juror could find an employer's stated reason for terminating employment to be "mendaci[ous]," Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)), will "not . . . always be adequate to sustain a jury's finding of liability," id. 148. For example, judgment as a matter of law in an employer's favor would be appropriate in a case in which "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." Id. More generally, Reeves counsels,

> [w]hether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and

- 34 -

> that properly may be considered on a motion
> for judgment as a matter of law.

Id. at 148-49.

Although Forsythe's claim under Title VII does concern a termination that followed her having made complaints about her treatment at the company, the complaints consisted of an allegation of sexual harassment and an allegation that her supervisor had retaliated against her for having complained about that gender-based harassment. In addition, the record supportably shows that she was then replaced, as to at least some her job duties, by a man following the termination of her employment.[14] Thus, in light of these specific features of the record, and given the showing that Forsythe has made as to each of the elements of the prima facie case and the fact that she has supportably shown not merely that Wayfair's stated reason for ending her employment at the company was false but that Wayfair knew that it was false, Forsythe

---

[14] Forsythe has put forth evidence that suffices to create a factual dispute as to whether Forsythe was ultimately replaced by a male employee, Mike Thayer, whom her supervisor, McKnight, had earlier identified to Forsythe as someone he wanted to hire. In particular, Forsythe points to the testimony of a Wayfair employee, Brittaney Skaggs, who, when asked "who replaced Emily after she left?" answered, "[m]y current boss, Mike Thayer." Wayfair counters this evidence with the undisputed fact that Thayer was hired for a position that was open even during Forsythe's employment. But, Wayfair's brief does appear to credit Skaggs's testimony to the extent it shows that "Thayer assumed some of [Forsythe's] role" after her departure.

- 35 -

has supportably shown what she must for this claim to survive summary judgment.

Nor, given the fact-specific nature of the inquiry that Reeves requires, do we see how Wayfair's reliance on Ponte v. Steelcase or Meléndez v. Autogermana, Inc. suggests otherwise. In those cases, unlike this one, the employers justified their decisions by invoking objective evidence of the plaintiffs' poor performance rather than by identifying a purported resignation. See Ponte, 741 F.3d at 323 (holding that plaintiff's termination on stated grounds of poor performance was "a reasonable business practice" and not pretextual); Meléndez v. Autogermana, Inc., 622 F.3d 46, 52–53 (1st Cir. 2010) (holding that evidence that an employer had erroneously applied performance standards to the plaintiff would have been insufficient for a reasonable trier of fact to find the employer's evaluation of the employee's performance to have been "a pretext masking its impermissible discriminatory animus"). And, the same is true of Feliciano de la Cruz v. El Conquistador Resort & Country Club, on which Meléndez relied. See 218 F.3d 1, 7–8 (1st Cir. 2000) (noting that a finding that an employer decided to fire an employee who was performing well -- for stated, performance-based reasons that a reasonable juror could have disbelieved -- might be "unfair," but would not in itself be "sufficient to state a claim under Title VII.").

Thus, we decline to follow Wayfair's suggestion that we affirm the District Court's summary judgment on the ground -- not relied on by the District Court -- that the record provides no basis for a reasonable juror to infer a discriminatory motive for her involuntary termination.  Instead, we conclude on this record that a juror reasonably could make such an inference as to the true motive for the company's decision to treat her as having offered to resign.

**B.**

There remains only Forsythe's parallel gender-based disparate treatment termination claim under Massachusetts law. But, it is clear that if a claim of gender-based discriminatory termination under Title VII can survive summary judgment, such a claim under Massachusetts anti-discrimination law can as well. See Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 33 (Mass. 2016) ("Massachusetts is a pretext only jurisdiction." (quoting Blare, 646 N.E.2d at 116)).  Thus, we must reverse the District Court's ruling granting summary judgment on that state law claim as well.

**V.**

For the reasons discussed above, we affirm the District Court's grant of summary judgment on Forsythe's state and federal claims against Wayfair for failing to remedy sexual harassment. As to Forsythe's remaining state and federal claims, we reverse

and <u>remand</u> to the District Court for further proceedings consistent with this opinion.

The parties shall bear their own costs.