# United States Court of Appeals
## For the First Circuit

No. 15-1571

FLOVAC, INC.,

Plaintiff, Appellant,

v.

AIRVAC, INC. and MARK JONES,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Lynch, Selya and Lipez,
Circuit Judges.

Roberto Ruiz Comas, with whom RC Legal & Litigation Services,
P.S.C. was on brief, for appellant.
Zachary A. Madonia, with whom David M. Schiffman, Courtney A.
Hoffmann, Sidley Austin LLP, Rafael Escalera Rodriguez, and
Reichard & Escalera were on brief, for appellees.

April 4, 2016

**SELYA**, **Circuit Judge**.   That an antitrust case may turn on the definition of the relevant market is a common-sense proposition.   In this instance, the summary judgment record disclosed a relevant market much broader than the plaintiff claimed — a market in which the defendant lacked any semblance of market dominance.   Finding the plaintiff's antitrust claims wanting and its companion claims equally impuissant, the district court entered summary judgment in favor of the defendant.   After careful consideration, we affirm.

## I.   BACKGROUND

Plaintiff-appellant Flovac, Inc. (Flovac) and defendant-appellee Airvac, Inc. (Airvac) both fabricate vacuum sewer systems.   Such systems are among the options available to transfer sewage from various sources to wastewater treatment facilities.   There is money to be made in providing this essential infrastructure to governmental units (especially municipalities) and to developers.

In May of 2012, Flovac filed suit against Airvac and Airvac's president, Mark Jones, in the United States District Court for the District of Puerto Rico.   Flovac sought relief under both federal and Puerto Rico antitrust laws, see 15 U.S.C. §§ 1-2; P.R. Laws Ann. tit. 10, §§ 258, 260, alleging that Airvac's conduct in marketing its vacuum sewer systems was anticompetitive.   The specifics of the challenged behavior are irrelevant here; for

present purposes, it suffices to say that the alleged anticompetitive conduct occurred in the course of Airvac's solicitation of municipalities interested in installing new sewer systems. According to Flovac, Airvac lobbied those prospective customers both to choose vacuum systems and to impose project specifications favorable to its proprietary wares.

Flovac's complaint also contained claims of tortious interference with advantageous economic relations, brought against Airvac and Jones under Puerto Rico law. See P.R. Laws Ann. tit. 31, § 5141. These claims focused on a specific vacuum sewer system installation in Toa Baja, Puerto Rico (the Ingenio Project). Both Flovac and Airvac competed for that project; and though the Puerto Rico Aqueduct and Sewer Authority (PRASA) solicited bids for a vacuum sewer system with specifications modeled on Airvac's system, the general contractor who won the bid chose Flovac to provide the vacuum system components.

Airvac did not go quietly into this bleak night. The Ingenio Project was funded in part through the American Recovery and Reinvestment Act of 2009 (ARRA), Pub. L. No. 111-5, 123 Stat. 115, which contained certain "Buy American" provisions, mandating that funded projects use only materials produced in the United States, see id. § 1605. Jones — noting both the ARRA's mandate and the stipulation in the project requirements that the component parts for the system had to be purchased from a single manufacturer

— wrote to PRASA in May of 2010 questioning the manufacturing process for Flovac's system. PRASA halted Flovac's work temporarily, but replied in June that it was satisfied that Flovac's system complied with both the ARRA and the applicable project requirements.

Airvac then raised the ARRA compliance issue in a letter to the Environmental Protection Agency (EPA) — the agency tasked with overseeing the "Buy American" requirements for the Ingenio Project. EPA investigated the complaint and recommended that Flovac implement some modifications to its manufacturing process. Flovac complied. It thereafter completed the project, but not without protracted delays (allegedly attributable to Airvac's meddling).

After a series of discovery squabbles (not relevant here), Airvac moved for summary judgment. See Fed. R. Civ. P. 56(a). Flovac opposed the motion. In a thoughtful rescript, the district court granted summary judgment in Airvac's favor on all claims. See Flovac, Inc. v. Airvac, Inc., 84 F. Supp. 3d 95, 107 (D.P.R. 2015). This timely appeal followed.

## II. ANALYSIS

Our standard of review is de novo, which requires us to take the facts in the light most agreeable to the summary judgment loser and to draw all reasonable inferences from those facts in that party's favor. See Tropigas de P.R., Inc. v. Certain

Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011). Summary judgment is permissible only when examination of the record in that light reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party moving for summary judgment must identify for the district court the portions of the record that show the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing is made, "the burden shifts to the nonmoving party, who must, with respect to each issue on which [it] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [its] favor." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). This demonstration must be accomplished by reference to materials of evidentiary quality, see Garside v. Osco Drug, Inc., 895 F.2d 46, 49 (1st Cir. 1990), and that evidence must be more than "merely colorable," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). At a bare minimum, the evidence must be "significantly probative." Id. at 249-50. The nonmovant's failure to adduce such a quantum of evidence entitles the moving party to summary judgment. See Tobin v. Fed. Express Corp., 775 F.3d 448, 450-51 (1st Cir. 2014).

## A.  **Antitrust Claims.**

Flovac has asserted claims under two separate provisions of the Sherman Act: Section 1, which forbids conspiracies in restraint of trade, and Section 2, which bars monopolization or attempted monopolization of a particular area of commerce. See 15 U.S.C. §§ 1-2.  Since Flovac's Section 1 claim is explicitly limited to the rule of reason, see, e.g., Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 551 U.S. 877, 885-87 (2007), all of its antitrust claims require proof that Airvac exercises or could exercise a threshold degree of market power, see Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 456 (1993); E. Food Servs., Inc. v. Pontifical Catholic Univ. Servs. Ass'n, Inc., 357 F.3d 1, 5 (1st Cir. 2004); Coastal Fuels of P.R., Inc. v. Caribbean Petroleum Corp., 79 F.3d 182, 195 (1st Cir. 1996).[1]  This analysis demands consideration of the defendant's market power, that is, its power to lessen or eliminate competition in the relevant market.  See Spectrum Sports, 506 U.S. at 456; E. Food Servs., 357 F.3d at 5; Coastal Fuels, 79 F.3d at 196.

---

[1] With respect to matters relevant to this appeal, Puerto Rico's antitrust statute is coterminous with the Sherman Act. See Podiatrist Ass'n, Inc. v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 16 (1st Cir. 2003); Coastal Fuels, 79 F.3d at 195; Pressure Vessels of P.R., Inc. v. Empire Gas de P.R., 137 P.R. Dec. 497, 508-13 (1994) (official translation, slip op. at 8-14).  Thus, the antitrust claims separately brought under Puerto Rico law rise or fall with Flovac's Sherman Act claims and do not warrant independent analysis.

The definition of the relevant market is ordinarily a question of fact, and the plaintiff bears the burden of adducing enough evidence to permit a reasonable factfinder to define the relevant market.  See Coastal Fuels, 79 F.3d at 197.  The relevant market has two components: the relevant geographic market and the relevant product market.  See Spectrum Sports, 506 U.S. at 459; E. Food Servs., 357 F.3d at 5-6.

The first part of the relevant market inquiry is not controversial here.  The parties agree that the relevant geographic market is the continental United States and Puerto Rico.  Consequently, the inquiry in this case reduces to what the evidence shows — or fails to show — about the scope of the relevant product market.

Determining the scope of a product market begins with examining the universe of products that are considered "reasonably interchangeable by consumers for the same purposes."  United States v. E.I. du Pont de Nemours & Co., 351 U.S. 377, 395 (1956).  The market is established by examining both the substitutes that a consumer might employ and "the extent to which consumers will change their consumption of one product in response to a price change in another, i.e., the 'cross-elasticity of demand.'"  Eastman Kodak Co. v. Image Tech. Servs., Inc., 504 U.S. 451, 469 (1992) (quoting du Pont, 351 U.S. at 400).

These abecedarian principles are sufficient to resolve the case at hand. In the court below, Flovac offered only a single definition of the relevant product market: a product market restricted to vacuum sewer systems. Airvac argued, however, that the relevant product market is composed of all sewer systems (including both vacuum and non-vacuum varieties). This disparity is significant because Airvac's market share within the narrower market envisioned by Flovac is around 87%, while its share of the broader market is closer to 2%. An 87% market share would almost certainly be a clear indication of market dominance, but a 2% market share would be too puny to provide any semblance of market power. See, e.g., Grappone, Inc. v. Subaru of New England, Inc., 858 F.2d 792, 797 (1st Cir. 1988) (concluding that market share of 5.6% does not demonstrate market power).

To establish the lack of any material fact dispute about the relevant product market, Airvac cites to uncontested evidence that there is a variety of sewer system options that all serve the same basic purpose; that prospective customers routinely consider those other systems (along with vacuum systems) when deciding what system to purchase; and that, in virtually every instance in which Airvac bid for a project, it competed against these alternatives. See Flovac, 84 F. Supp. 3d at 101. This evidence suffices, at the very least, to shift the burden of adducing contrary facts about

product interchangeability and cross-elasticity of demand.  See Borges, 605 F.3d at 5.

In an attempt to carry this burden and generate a contested issue of material fact, Flovac points mainly to two pieces of evidence.  First, it relies on a statement from its president, Héctor Rivera, to the effect that "[v]acuum sewer systems as a particular technology [are] more suitable for particular geographical and topographical areas than gravity or other technologies."  Second, Flovac submits that a review of the record will reveal a list indicating that Flovac has completed more projects in certain states than in others.  The district court found these offerings insufficient to stave off summary judgment, and so do we.[2]

The proffered evidence is probative only as to Flovac's view of the relevant product market; it does not speak at all to the perspective of consumers.  Seen in this light, the evidence has no bearing on the key questions of product interchangeability and cross-elasticity of demand from the perspective of consumers.

---

[2] Although our holding does not depend on these shortcomings, we note that both of these proffers are intrinsically deficient. Rivera's statement is an undated declaration that does not comport with statutory requirements.  See 28 U.S.C. § 1746; see also Bonds v. Cox, 20 F.3d 697, 702 (6th Cir. 1994).  Similarly, the list of projects was not mentioned in Flovac's statement of disputed material facts and, thus, was properly excluded from the summary judgment record by the district court.  See D.P.R. Civ. R. 56(c), (e); see also Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7-8 (1st Cir. 2007).

Without such evidence, a jury could not find as a fact that the product market should be defined along the lines that Flovac proposes.  It is the consumer's options and the consumer's choices among them on which relevant market analysis ultimately depends.  See George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc., 508 F.2d 547, 551 (1st Cir. 1974) ("A market definition which is confined to the seller's perspective is not meaningful.  By necessity, definition of [a] 'market' must also focus on [the] attitudes and reactions of consumers."  (citations omitted)).

At any rate, Rivera's statement is nothing more than a generalized suggestion that, from his coign of vantage, vacuum systems are better suited to some geographic areas than to others.  The statement provides no specifics about what factors drive that suitability calculation or how the calculation affects the choices consumers make when considering what kind of sewer system to purchase.

Flovac's reference to the list of completed projects is singularly unhelpful.  The mere fact that Airvac has completed more projects in some states than in others, without elaboration, tells us nothing of value about the relevant product market.

In an eleventh-hour effort to undermine the granting of summary judgment, Flovac makes three further arguments.  All of them are fruitless.

To begin, Flovac attempts to rely on statements made by Airvac employees, in the course of pretrial depositions, which it claims substantiate its theory that vacuum systems are uniquely suited to certain topographical settings. Any such reliance is doubly mislaid. For one thing, Flovac did not bring any of these statements to the district court's attention in its summary judgment papers. Given that omission, Flovac cannot now attempt to resurrect those statements on appeal. See Cochran v. Quest Software, Inc., 328 F.3d 1, 11 (1st Cir. 2003) ("[A] party may not advance for the first time on appeal either a new argument or an old argument that depends on a new factual predicate.").

If more were needed — and we doubt that it is — the belatedly identified statements suffer from the same basic infirmity as the Rivera statement and the list of projects. None of those statements is probative of either the interchangeability of different types of sewer systems or the cross-elasticity of demand.

We need not tarry over Flovac's contention that the district court blundered in failing to consider whether vacuum sewer systems make up a submarket of the broader product market for sewer systems. Even assuming, for argument's sake, that this contention is properly before us,[3] characterizing Flovac's claims

_____

[3] Flovac did not brief this contention at all in the district court but, rather, voiced it for the first time at oral argument

- 11 -

as involving a submarket is smoke and mirrors.  The requirements for establishing a relevant submarket are no different than those for establishing a relevant market.  See, e.g., PSKS, Inc. v. Leegin Creative Leather Prods., Inc., 615 F.3d 412, 418 (5th Cir. 2010); Geneva Pharm. Tech. Corp. v. Barr Labs. Inc., 386 F.3d 485, 496 (2d Cir. 2004).  Therefore, the evidentiary flaws identified above would operate to defeat the proffered submarket claim as well.

Finally, Flovac insists that the district court erroneously imposed an ironclad requirement that a plaintiff provide expert testimony in order to establish the relevant market. But this case does not require us to take a position on the need for expert testimony in a Sherman Act case, and we express no opinion on that matter.  Instead, we reject Flovac's argument as sheer persiflage.

The district court observed that other circuits have imposed such a rule, see, e.g., Bailey v. Allgas, Inc., 284 F.3d 1237, 1246 (11th Cir. 2002), and that expert testimony is a common and useful device for establishing a product market, see Flovac, 84 F. Supp. 3d at 102; see also U.S. Healthcare, Inc. v. Healthsource, Inc., 986 F.2d 589, 599 (1st Cir. 1993) ("In

_____

on Airvac's motion for summary judgment.  The district court concluded that the contention was not timely raised, but nonetheless proceeded to spotlight its deficiencies.  See Flovac, 84 F. Supp. 3d at 104 n.1.

- 12 -

practice, the frustrating but routine question how to define the product market is answered in antitrust cases by asking expert economists to testify."). But the court stopped there: it explicitly acknowledged that this circuit has yet to adopt such a rigid rule and prudently eschewed the application of any such requirement. Rather, the court's analysis relied on the wholly anodyne notion that Flovac had a responsibility to "introduce some type of economic evidence, even if not done through an economic expert." Flovac, 84 F. Supp. 3d at 102. Because Flovac failed to fulfill that responsibility, its opposition to summary judgment failed.

That ends this aspect of the matter. The scanty evidence that Flovac has assembled amounts to nothing more than a gesture in the direction of a potential factual dispute; and we have made pellucid that "[s]peculation about mere possibilities" cannot ward off the swing of the summary judgment ax. Tobin, 775 F.3d at 452. On this record, the district court appropriately jettisoned Flovac's antitrust claims.[4]

### B. **Tortious Interference.**

This leaves Flovac's claim of tortious interference with advantageous economic relations. Those claims, which are premised

---

[4] Airvac has served up a salmagundi of other defenses to the antitrust claims. Given Flovac's failure to establish the relevant market that it proposed, it is unnecessary for us to consider those other defenses.

on Jones's interactions with PRASA and EPA concerning the Ingenio Project, stumble at the threshold: they are stale.

Flovac brought the tortious interference claims under Puerto Rico's general tort statute. See P.R. Laws Ann. tit. 31, § 5141. Claims under this statute are subject to a one-year limitations period, which begins to run "from the time the aggrieved person had knowledge" of the harm. Id. § 5298(2). In computing that period, "knowledge" consists of "notice of the injury, plus notice of the person who caused it." Rodriguez-Suris v. Montesinos, 123 F.3d 10, 13 (1st Cir. 1997) (quoting Colón Prieto v. Géigel, 15 P.R. Offic. Trans. 313, 331 (1984)). The district court concluded that, interpreting the facts most hospitably to Flovac, these prerequisites were satisfied no later than June of 2010, once PRASA halted work on the Ingenio Project (shortly after receiving Jones's letter). See Flovac, 84 F. Supp. 3d at 106. Flovac, however, did not commence this suit until May 16, 2012 (nearly two years later).

Flovac does not dispute that it had notice of both the injury and its source by June of 2010. Nevertheless, it tries to execute an end run around the effect of that notice by resort to the "continuing damages" doctrine, asseverating that under that doctrine the limitations clock did not begin to tick until the damage was complete. This asseveration amounts to nothing more than magical thinking.

- 14 -

Continuing damages cases are still subject to the general rule that a "plaintiff may 'not wait for his [or her] injury to reach its final degree of development and postpone the running of the period of limitation according to his [or her] subjective appraisal and judgment.'" Rodriguez-Suris, 123 F.3d at 13 (alterations in original) (quoting Ortiz v. Municipio de Orocovis, 13 P.R. Offic. Trans. 619, 622 (1982)). It follows inexorably that, even in continuing damages cases, "[t]he determining factor is the moment when occurrence of the damage begins, and that should be considered the starting point for the limitations period, assuming that the aggrieved parties were aware of the damage as of that moment and that they could have instituted a cause of action." Galib Frangie v. El Vocero de P.R., Inc., 138 P.R. Dec. 560, 575 (1995) (official translation, slip op. at 8).

Flovac offers no persuasive counterweight to this luminously clear precedent. To be sure, Flovac has cited two Puerto Rico cases — but it has done so without submitting certified translations of either opinion. Thus, those cases can form no part of our deliberations. See 1st Cir. R. 30.0(e); see also Deniz v. Municipality of Guaynabo, 285 F.3d 142, 148 (1st Cir. 2002). The only other Puerto Rico case that Flovac cites is far off point: it addresses limitations and damages questions stemming from an ongoing nuisance. See Seda v. Miranda Hnos. & Co., 88 P.R. 344, 349-50 (1963).

The short of it is that, as the district court ruled, Flovac's tortious interference claims are time-barred.

## III.   CONCLUSION

We need go no further.  We conclude that, on this sparse record, Flovac has failed to show the existence of a genuine issue of material fact as to the scope of the relevant product market.[5] We likewise conclude that Flovac's tortious interference claims are time-barred.  It necessarily follows that the district court's entry of summary judgment in Airvac's favor is unimpugnable.


**Affirmed.**

---

[5] We take no view as to whether, on a better developed record, a narrower product market might be shown to exist.  That is a matter for another day.