# United States Court of Appeals
## For the First Circuit

No. 21-1609

THOMAS DUSEL,

Plaintiff, Appellant,

v.

FACTORY MUTUAL INSURANCE COMPANY, d/b/a FM GLOBAL,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Barron, Chief Judge,
Gelpí, Circuit Judge,
and Katzmann,[*] Judge.

Danielle Callahan Gill, with whom Callahan Law Group, LLC was on brief, for appellant.
Matthew A. Porter, with whom Todd H. Girshon, Jonathan C. Hatfield, and Jackson Lewis P.C. were on brief, for appellee.

November 1, 2022

_____

[*] Of the United States Court of International Trade, sitting by designation.

**GELPÍ**, **Circuit Judge**. Appellant Thomas Dusel ("Dusel") was an employee of Appellee Factory Mutual Insurance Company, d/b/a FM Global ("FM Global") until his termination on September 12, 2018. Dusel, alleging that the stated grounds for his firing were pretextual, brought suit against FM Global in Massachusetts state court alleging age discrimination and retaliation against a protected activity. The action was removed to the United States District Court for the District of Massachusetts, which granted FM Global's motion for summary judgment on both claims. We affirm.

## I. Background

Dusel, a citizen of Massachusetts, was an employee of FM Global, a commercial property insurer headquartered in Rhode Island, for approximately thirty-five years. At the time of his termination, Dusel was President and Chief Executive Officer ("CEO") of Hobbs Brook Management ("HBM"), a Waltham, Massachusetts-based subsidiary of FM Global which provides real estate management and services for its properties. Several employees reported to Dusel in his capacity as President and CEO of HBM, including Kevin Casey ("Casey"), HBM's Vice President of Leasing and Construction.

In 2015, Patricia Holland ("Holland"), an HBM employee, filed a complaint with FM Global's Human Resources ("HR") department alleging harassment and other inappropriate behavior by Casey, then her supervisor. HR conducted an investigation but

- 2 -

declined to discipline Casey. Dusel later testified at a deposition that he did not consider himself a witness to the specific alleged behavior that was the subject of the 2015 investigation, but that he nonetheless disagreed with the outcome of the inquiry and had expressed as much to HR. In February 2018, Holland filed another complaint against Casey alleging workplace misconduct, whereupon a second internal investigation ensued. Dusel claims that Holland initially came to him with her concerns, which he passed along to his supervisors, and that he had encouraged her to reach out to HR. Pursuant to the second investigation, Dusel reported to HR over the course of three interviews that he had observed Casey acting aggressively toward different men and women, including Holland, and that other employees had previously expressed concerns regarding the workplace environment created by Casey. HR again concluded that it lacked sufficient evidence to determine that Casey had violated FM Global's policies.

Following the second HR investigation, FM Global decided in March 2018 to relocate HBM's management team to FM Global's corporate headquarters in Johnston, Rhode Island, and to rearrange HBM's organizational structure such that Casey and Holland would report directly to Alex Tadmoury, Dusel's supervisor at FM Global. Dusel was displeased by this decision, and in April and June 2018 sent letters through an attorney to FM Global protesting that the

move would substantially increase his commute time and diminish his job responsibilities. Dusel suggested that FM Global's stated reasons for the operational changes were pretextual, and that FM Global was in fact retaliating against him in connection with his role in the 2018 HR investigation into Casey. Dusel also complained, in his June 2018 letter, that his May 9 performance review -- wherein he received an overall rating of "Meets Expectations" -- similarly evinced FM Global's continued retaliatory animus. FM Global disputed that the changes were punitive in nature, claiming that they were intended to increase cohesion among the HBM leadership team, enable better supervision by FM Global, and defuse interpersonal tensions that were revealed by the HR investigation.

In July 2018, FM Global began an audit of the cell phone account for HBM after an HBM employee sought to retain his cell phone following his departure from the company. During the investigation, FM Global discovered that Dusel possessed three cell phone lines, two of which belonged to his wife and daughter, which had been charged to the company's account for several years. Dusel never reimbursed HBM for these expenses. While the investigation into HBM's cell phone expenses was ongoing, Dusel transferred his wife and daughter's cell phone lines from the company plan to a personal account. Shortly thereafter, Dusel told company investigators that none of his family members had

phone lines charged to HBM's company account, without informing them that the phone lines had been charged to HBM until the previous month.  In August 2018, FM Global produced a report concluding that Dusel had been untruthful in several respects with regard to the cell phone investigation.  Dusel disputes having deceived the investigators, claiming that he had been confused about the phone lines and arguing that his statement as to none of his family members having any service plans charged to HBM was technically truthful at the time he made the claim.

Concurrently with the cell phone investigation, FM Global opened an inquiry into Dusel's frequent visits to an HBM-owned building in Wakefield, Massachusetts (the "Wakefield facility") outside of normal business hours.  Surveillance footage revealed Dusel entering the Wakefield facility's cafeteria on several occasions carrying an empty bag and leaving shortly thereafter with a full bag.  FM Global found evidence that Dusel had visited the facility at least eighty-seven times in the previous two years, frequently after work hours or on weekends. In a report, FM Global concluded that Dusel had likely been stealing food from the Wakefield facility for several years. Dusel, for his part, denies taking food from company property without compensating HBM.

In September 2018, FM Global terminated Dusel on the stated grounds of violations of the company's code of conduct and

misappropriation of company services and property.  Following Dusel's termination, FM Global found that Dusel had amassed a considerable physical and electronic collection of sexually explicit materials in his office, all in violation of FM Global policy.  Dusel admitted in a deposition to accessing adult materials using company servers.  Prior to the events in question, Dusel had never been formally disciplined by FM Global.

On July 17, 2019, Dusel brought suit against FM Global in Massachusetts state court, alleging age discrimination and retaliation under Mass. Gen. Laws ch. 151B, § 4(1B) and § 4(4).[1] FM Global removed the action to federal court on the basis of diversity jurisdiction, and filed an Answer with Counterclaims against Dusel for misappropriation, waste of corporate assets, conversion, unjust enrichment, and breach of fiduciary duty.  On

---

[1] In relevant part, Mass. Gen. Laws ch. 151B, § 4(1B) makes it unlawful

> [f]or an employer in the private sector . . . because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.

Mass. Gen. Laws ch. 151B, § 4(4) provides that it is illegal for an employer "to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five [of Mass. Gen. Laws ch. 151B]."

April 21, 2021, the parties cross-moved for summary judgment. Later, Dusel filed a motion to exclude evidence relating to the pornographic materials as well as motions to strike certain affidavits FM Global had filed in support of its motion for summary judgment and certain paragraphs from its Statement of Undisputed Material Facts. On July 14, 2021, the district court denied Dusel's motions and granted summary judgment in favor of FM Global, dismissing Dusel's complaint in its entirety. Dusel v. Factory Mut. Ins. Co., No. 19-11698, 2021 WL 2953322, at *10 (D. Mass July 14, 2021). Subsequently, FM Global dismissed its counterclaims without prejudice. Dusel timely appealed.

## II. Discussion

On appeal, Dusel contends that the district court erred in granting summary judgment on the retaliation and age discrimination claims and in denying Dusel's evidentiary motions. We assess Dusel's arguments regarding the age discrimination and retaliation claims and the evidentiary motions seriatim.

**A. The District Court Did Not Err in Granting Summary Judgment to FM Global on Dusel's Age Discrimination and Retaliation Claims**

**1. Standard of Review**

We review a district court's grant or denial of summary judgment de novo, examining the record in the light most favorable to the nonmovant and drawing all reasonable inferences in that party's favor. Murray v. Kindred Nursing Ctrs. W. LLC, 789 F.3d

20, 25 (1st Cir. 2015). "To prevail, the movant must demonstrate that 'there is no genuine dispute as to any material fact' and that it 'is entitled to judgment as a matter of law.'" Id. (quoting Fed. R. Civ. P. 56(a)). This standard is unchanged when the district court disposes of cross-motions for summary judgment simultaneously. See Blackie v. Maine, 75 F.3d 716, 721 (1st Cir. 1996). Facts are material if they "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the party moving for summary judgment is able to make a showing that there is no genuine issue of material fact, "the burden shifts to the nonmoving party, who must, with respect to each issue on which [it] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [its] favor." Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016) (alterations in original) (quoting Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010)). Evidence of a genuine dispute of material fact "must be 'significantly probative'" and "more than 'merely colorable.'" Id. (quoting Anderson, 477 U.S at 249-50).

## 2. The Age-Discrimination Claim

Massachusetts's antidiscrimination statute forbids employers from discriminating against or terminating employees based on their age. Mass. Gen. Laws ch. 151B, § 4(1B). Under Massachusetts law, there are "four elements an employee must prove

- 8 -

to prevail on a claim of discrimination in employment: membership in a protected class, harm, discriminatory animus, and causation." Sullivan v. Liberty Mut. Ins. Co., 825 N.E.2d 522, 530 (Mass. 2005). If direct evidence of the latter two factors is unavailable, Massachusetts courts apply the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), by which a plaintiff may establish animus or causation. Sullivan, 825 N.E.2d at 530 & n.11 (noting that it is the Massachusetts Supreme Judicial Court's "practice to apply Federal case law construing the Federal antidiscrimination statutes in interpreting [Mass. Gen. Laws ch.] 151B" (quoting Wheatley v. Am. Tel. & Tel. Co., 636 N.E.2d 265, 268 (Mass. 1994))). Under this tripartite framework, a plaintiff bears the initial burden of establishing a prima facie case of age discrimination by demonstrating that he or she "(1) was a member of the class protected by [Mass. Gen. Laws ch.] 151B (that is, over forty years of age); (2) had performed [his or] her job at an acceptable level; (3) was terminated; and (4) was replaced by a similarly or less qualified" person at least five years younger. Knight v. Avon Prods., Inc., 780 N.E.2d 1255, 1262, 1265 (Mass. 2003) (footnote omitted).[2] If the plaintiff is able to establish

---

[2] Knight further clarifies that "the elements of the prima facie case will vary depending on, among other things, the type of discrimination alleged and the protected category at issue" and

- 9 -

a prima facie case, the burden of production -- though not, at summary judgment, the burden of persuasion -- "shifts to the employer to 'articulat[e] a legitimate, nondiscriminatory reason for its hiring decision,'" whereupon "the burden of production shifts back to the employee to produce evidence that 'the employer's articulated justification [for the adverse action] is not true but a pretext.'" Verdrager v. Mintz, Levin, Cohn, Ferris,

states that to satisfy the fourth element of the prima facie case in an age-discrimination suit, a plaintiff must either show replacement by a "substantially younger" individual "or otherwise present some evidence that supports a reasonable inference that age was a determinative factor in the employer's decision." 780 N.E.2d at 1258, 1261 n.4. How courts lay out the final prong of the prima facie case can differ slightly depending on the case. See, e.g., Bennett v. Saint-Gobain Corp., 507 F.3d 23, 30 (1st Cir. 2007) (fourth prong, in an age-discrimination case brought under both federal law and Mass. Gen. Laws ch. 151B, § 4(1B), was satisfied if the "employer had a continuing need for the services that he had been rendering"); Sullivan, 825 N.E.2d at 531, 533-34 (fourth prong requires that "employer sought to fill [the employee's] position by hiring another individual with qualifications similar to [the employee's]," and, at least in a reduction-of-force case, this is met if the plaintiff can proffer "some evidence that [the plaintiff's] layoff occurred in circumstances that would raise a reasonable inference of unlawful discrimination"); see also Abramian v. Pres. & Fellows of Harvard Coll., 731 N.E.2d 1075, 1084 (Mass. 2000) (noting that the specific elements of the prima facie showing "may vary depending on the specific facts of a case" (quoting Blare v. Husky Injection Molding Sys. Bos., Inc., 646 N.E.2d 111, 115 (Mass. 1995))). Here, it is only the second prong of the prima facie case -- acceptable job performance -- that the district court found lacking. In its briefing to us, FM Global similarly contends that Dusel failed to establish adequate performance, but does not dispute that Dusel met the other elements of the prima facie case. As such, we assume, for purposes of summary judgment, that it is only the acceptable-performance prong that is in dispute.

- 10 -

Glovsky & Popeo, P.C., 50 N.E.3d 778, 793 (Mass. 2016) (alterations in original) (quoting Blare, 646 N.E.2d at 115-16).

We begin with the prima facie case. "Whether a plaintiff has proffered evidence sufficient to establish a prima facie case is a question of law and depends on the specific facts of a case." Knight, 780 N.E.2d at 1263. The Supreme Court has made clear that the first stage of the McDonnell Douglas framework is "not onerous." Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981). Indeed, "[w]e have described this prima facie showing as 'modest,' and a 'low standard.'" Vélez v. Thermo King de P.R., 585 F.3d 441, 447 (1st Cir. 2009) (first quoting Rathbun v. Autozone, Inc., 361 F.3d 62, 71 (1st Cir. 2004); and then quoting Zapata-Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 44 (1st Cir. 2002)); accord Villanueva v. Wellesley Coll., 930 F.2d 124, 127 (1st Cir. 1991) (prima facie showing of employment discrimination is "quite easy to meet").

Notwithstanding this relatively lax standard, the district court determined that Dusel had failed to meet his burden at the prima facie stage because he was unable to demonstrate that he performed his job at an acceptable level. Dusel, 2021 WL 2953322, at *6. In so holding, the court emphasized that Dusel had failed to counter the evidence mustered by FM Global showing "1) that he had improperly charged the company for personal phone lines and other expenses, 2) that he had problems managing his

- 11 -

staff and 3) [that] security camera footage [depicted] Dusel entering company-owned property outside of business hours and for no legitimate business purpose." Id. Further, while Dusel offered his track record of positive performance reviews and substantial compensation as evidence that he was performing his job at an acceptable level, the court determined that previous "[y]ears of positive performance do not . . . create a genuine dispute as to an employee's performance at the time of his termination," and that his compensation was likewise not probative of his "day-to-day performance of his job." Id. As such, the district court concluded, "[t]he evidence indicates that there is no genuine dispute as to whether plaintiff can establish a prima facie case of age discrimination." Id.

On review, we find that the district court erred in determining that Dusel failed to make out a prima facie case of age discrimination. "A plaintiff is not required, at the prima facie stage, to disprove the defendant's proffered nondiscriminatory reason for taking an adverse employment action." Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 139 (1st Cir. 2012) (district court erred in considering employer's "alleged reason for dismissal" at the first stage of the McDonnell Douglas analysis). Such evidence properly comes into play only at the second and third stages of the McDonnell Douglas framework, where the burden shifts to the employer to offer a legally

sufficient rationale for the adverse employment action, and (if such an explanation is provided) the burden returns to the employee to demonstrate that such rationale was pretextual. See id. As such, by requiring Dusel to respond to FM Global's stated reasons for his termination at the outset (to wit, Dusel's improper cell phone charges, staff management issues, and suspicious after-hours visits to company property), the district court placed too much heft onto a burden that, at the prima facie stage, is intended to be light. "This error," we have noted, "was captured well" by the Sixth Circuit's explanation that

> [a] court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination.

Vélez, 585 F.3d at 448 (quoting Wexler v. White's Fine Furniture, Inc., 317 F.3d 564, 574 (6th Cir. 2003) (en banc)); see also Meléndez v. Autogermana, Inc., 622 F.3d 46, 51 (1st Cir. 2010) (similar).

In seeking to establish acceptable performance at his job -- here, the only disputed element of the prima facie case -- Dusel points to his thirty-five-year employment history at FM Global, including many years of positive performance reviews, elevation to HBM President and CEO, and significant bonus compensation. Despite the district court's skepticism, under our

precedents, this evidence more than suffices to meet Dusel's burden of showing acceptable performance. See, e.g., Vélez, 585 F.3d at 448 (plaintiff's "long record of employment," including previous promotions and a "twenty-four year period without discipline or indications of deficient performance," established acceptable-performance prong of prima facie case); Acevedo-Parrilla, 696 F.3d at 139 (burden of showing adequate job performance was met where plaintiff had "prior, well-rated experience" in the industry and "a long history of employment at the company, spanning an eleven-year period, with overall positive reviews"); Freeman v. Package Mach. Co., 865 F.2d 1331, 1334-35 (1st Cir. 1988) ("job-performance integer of the prima facie case" satisfied where plaintiff "adduced credible evidence that his work was adequate to meet [employer's] legitimate expectations," such as a lengthy employment history and a "string of promotions and bonuses"). Accordingly, because we cannot take into account FM Global's asserted rationale for terminating Dusel in assessing whether he made a prima facie showing of age discrimination, and because Dusel "tendered some evidence which, if believed, proved that he was doing his chores proficiently," Freeman, 865 F.2d at 1335, we hold that Dusel has carried his modest burden at the first stage of the McDonnell Douglas framework.

Nevertheless, although we disagree with the district court's determination that Dusel failed to make a viable prima

facie case of age discrimination, we agree with its determination that Dusel's claim runs aground at the subsequent step of the McDonnell Douglas scheme. The district court held that summary judgment would still have been appropriate even if Dusel had made a viable prima facie case, because FM Global articulated legitimate, nondiscriminatory reasons for his termination, and Dusel had failed to adduce evidence that this stated rationale was pretextual. Dusel, 2021 WL 2953322, at *6-7. On appeal, Dusel contends that the district court erred in these conclusions, disputing that he committed misconduct and arguing that the district court impermissibly discounted evidence pointing to a genuine dispute of material fact as to whether FM Global's stated reasons for his termination were pretextual.

At the second stage of the McDonnell Douglas approach, the burden of production shifts to the employer to spell out a legitimate, nondiscriminatory reason for the adverse employment action. If the "employer's proffered reason is facially adequate to constitute a legitimate, nondiscriminatory justification for the employer's actions," then the "presumption arising from a discrimination plaintiff's prima facie case vanishes," and the burden returns to the employee to demonstrate that the employer's asserted reasons were pretextual. Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824-25 (1st Cir. 1991). Here, FM Global has introduced evidence to the effect that such nondiscriminatory reasons served

- 15 -

as the basis for Dusel's termination -- specifically, an affidavit from the company's Chief Financial Officer Kevin Ingram (supported by the company's investigative documents) stating that FM Global terminated Dusel because he had violated company policy by charging multiple personal phone lines for several years to FM Global, attempted to conceal this behavior and lied to investigators about the issue, and made scores of after-hours trips to the Wakefield Facility, from which he appeared to be taking significant quantities of food according to video footage. Accordingly, FM Global has satisfied its burden of articulating legitimate, nondiscriminatory reasons for Dusel's termination.[3]

At the final stage of the McDonnell Douglas scheme, the burden returns to Dusel to demonstrate that FM Global's asserted reasons for his termination were pretextual. In attempting to argue that FM Global's reasons for his termination were indeed pretextual, Dusel does not rely on direct evidence of FM Global's age-based animus, but primarily alleges instead disparate

---

[3] While Dusel disputes certain of FM Global's allegations of misbehavior, at the second stage of the McDonnell Douglas framework the employer must satisfy "only a burden of production, not a burden of persuasion." Mesnick, 950 F.2d at 823; accord Sullivan, 825 N.E.2d at 537-38. Indeed, it need not prove that "it was actually motivated by the proffered reasons," but only that there exists at least "a genuine issue of fact as to whether it discriminated against the plaintiff." Burdine, 450 U.S. at 254. Thus, by claiming that FM Global's "nondiscriminatory reasons for his termination are very much in dispute," Dusel effectively concedes that FM Global met its burden at the second step of the McDonnell Douglas scheme.

treatment vis-à-vis Kevin Casey.  The gravamen of Dusel's argument is essentially that Casey, like Dusel, had multiple cell phone lines charged to the company, but was not terminated.  That Dusel was fired while Casey was retained, Dusel suggests, gives rise to an inference that FM Global's asserted rationale was pretextual.

This argument fails.  For one thing, as the district court noted, Casey was not implicated in the same misconduct that forms the basis of FM Global's articulated rationale for Dusel's termination.[4]  See Dusel, 2021 WL 2953322, at *6 (noting that, unlike Casey, FM Global accused Dusel of apparent food theft and attempting to deceive company investigators regarding the misuse of phone lines).  For another, to allow an inference of pretext from evidence of disparate treatment, Dusel must identify a "similarly situated" comparator.  Matthews v. Ocean Spray Cranberries, Inc., 686 N.E.2d 1303, 1310 (Mass. 1997) ("The most probative means of establishing that the plaintiff's termination

---

[4] Dusel also argues that Casey separately ran afoul of an anti-nepotism policy and improperly mischarged the firm for certain wedding expenditures.  Whatever the veracity of these various allegations, they do not alter the conclusion that Dusel's alleged misconduct differed from that of Casey.  For its part, FM Global contends that the firm's anti-nepotism policy was only put in place after Casey had hired the relatives in question, and argues that the record neither evidences that Casey mischarged FM Global for any wedding expenses nor indicates that Casey's phone lines were active or put to personal use, as is undisputedly the case for Dusel.

was a pretext . . . is to demonstrate that similarly situated [] employees were treated differently.").  That is, someone who is

> substantially similar to those of the complainant "in all relevant aspects" concerning the adverse employment decision.  "The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated. . . . In other words, apples should be compared to apples."

Trs. of Health & Hosps. of Bos., Inc. v. MCAD, 871 N.E.2d 444, 450 (Mass. 2007) (citation omitted) (quoting Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 19 (1st Cir. 1989), overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61 (1st Cir. 2004)).  We are skeptical that Casey -- who, as Dusel's subordinate had a different title, fewer responsibilities, and lower compensation -- is similarly situated "in all relevant respects" to Dusel, and Dusel makes no effort in his briefing to contend otherwise.  As such, we reject Dusel's argument that, on this basis, a reasonable factfinder could conclude that FM Global's stated reasons for terminating Dusel were pretextual.

Dusel also further charges that the district court erred in failing to identify factually disputed issues regarding his termination that could give rise to an inference of pretext, impermissibly weighing evidence that properly belonged before a jury.  His argument in this regard appears to be that, if a factfinder were to resolve certain factual disputes in his favor

- 18 -

-- in particular, disputes about whether he actually misused company phone accounts, intended to mislead investigators, or stole food from the Wakefield Facility -- such findings would lead the factfinder to "have serious doubt as to the veracity of [FM Global's] allegations of theft," which could give rise to an inference of pretext.

But, evidence that would provide a supportable basis for reaching a different conclusion than the employer did with respect to its stated basis for the employment action does not suffice for a plaintiff to defeat summary judgment on the ground that the employer's stated basis was pretextual. See Bulwer v. Mount Auburn Hosp., 46 N.E.3d 24, 33 (Mass. 2016) (explaining that, to survive summary judgment, the plaintiff must present "evidence from which a reasonable jury could infer that the [employer]'s facially proper reasons given for its action . . . were not the real reasons" that the employer took that action) (internal quotation omitted); accord Forsythe v. Wayfair, Inc., 27 F.4th 67, 80 (1st Cir. 2022) ("[I]t is not enough . . . 'to impugn the veracity of' [the employer]'s stated reason for [the employment action]." (quoting Ponte v. Steelcase Inc., 741 F.3d 310, 323 (1st Cir. 2014) (internal quotation omitted))). Rather, when a plaintiff seeks to show pretext by debunking the stated reason for the adverse employment action, they must present evidence from which a reasonable jury could supportably conclude "that the employer's

- 19 -

explanation is not just wrong, but that it is so implausible that the employer more likely than not does not believe it." Wayfair, 27 F.4th at 80 (citing Collazo-Rosado v. Univ. of P.R., 765 F.3d 86, 93 (1st Cir. 2014)).

Here, even accepting Dusel's premise that a jury could supportably find on this record that he was not responsible for the precise misconduct alleged by FM Global,[5] it does not follow that a jury could supportably find on this record that FM Global's leaders likely did not "believe [their] stated reason to be credible." Mesnick, 950 F.2d at 824. And, we see nothing in our review of the record that would permit such a finding.[6]

---

[5] We note that, despite Dusel's contentions, it appears undisputed from the summary judgment record that, inter alia, Dusel improperly charged HBM for his wife and daughter's phone plans for an extended period of time, failed to inform company investigators about these charges even as he sought to remove these plans from the company account, and entered company cafeterias over eighty times, frequently after business hours, wherein video evidence appeared to show him leaving with full bags that had been empty minutes before.

[6] Dusel also points to affidavits from two other former FM Global employees averring, in a conclusory fashion, that they believe age was a factor in their terminations. But we do not see how these separate allegations of age discrimination meaningfully bear on Dusel's own claims, and, absent more, are insufficient to give rise to any inference that would help Dusel surmount the summary judgment hurdle. See Medina-Munoz, 896 F.2d at 10 ("Particularly in a case like this one, where the employee's evidence of pretext is tenuous, these fragmentary tendrils do not suffice, without more, to prove that [the employer's] dismissal of [the employee] was motivated by age discrimination.").

Thus, while it is true that "[t]here are many veins of circumstantial evidence that may be mined by a plaintiff" to show pretext, id., Dusel's excavations fail to surface any meaningful ore. We therefore conclude that there is no triable issue of fact as to whether "the defendant's proffered reason for its employment decision was not the real reason, but is a pretext for discrimination." Matthews, 686 N.E.2d at 1309. Accordingly, the district court did not err in granting summary judgment on the age-discrimination claim. Cf. Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) ("Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation.").

**3. The Retaliation Claim**

Under Mass. Gen. Laws ch. 151B, § 4(4), it is illegal for an employer "to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five [of Mass. Gen. Laws ch. 151B]." The framework applicable to assessing retaliation claims is similar to that described earlier for the age-discrimination claim, "albeit with slight modifications." Mesnick, 950 F.2d at 827. "In the absence of direct evidence of

- 21 -

a retaliatory motive, to make out a prima facie case of retaliation, the plaintiff must show that 'he engaged in protected conduct, that he suffered some adverse action, and that "a causal connection existed between the protected conduct and the adverse action."'" Psy-Ed Corp. v. Klein, 947 N.E.2d 520, 530 (Mass. 2011) (quoting Mole v. Univ. of Mass., 814 N.E.2d 329, 338-39 (Mass. 2004)); see also Noviello v. City of Boston, 398 F.3d 76, 88 (1st Cir. 2005) ("To engage the gears of [§ 4(4)], a plaintiff must show that (i) []he undertook protected conduct, (ii) []he suffered an adverse employment action, and (iii) the two were causally linked."). As before, following the McDonnell Douglas framework, if the employee successfully makes a prima facie case, the burden of production then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden returns to the employee to prove that this rationale was pretextual. See Verdrager, 50 N.E.3d at 800.

The district court dismissed Dusel's retaliation claim, holding that he failed to establish a causal link between any arguably protected conduct and the adverse employment actions taken against him. Dusel, 2021 WL 2953322, at *7-8. Even if Dusel's apparent disagreement with the outcome of the 2015 investigation (following Holland's first complaint about Casey's alleged harassment and other misconduct) constituted protected

- 22 -

activity under § 4(4), the court determined, his mere participation in the 2018 investigation did not. Id. at *7. As such, the time elapsed between any plausibly protected activity and Dusel's eventual termination was too great -- and any inference of causality thus too attenuated -- for Dusel to make a successful prima facie case of retaliation, "especially when the intervening findings of misconduct are considered." Id. at *8.

On appeal, Dusel again contends that the district court erred in failing to identify disputed issues of material fact sufficient to defeat summary judgment. To this end, Dusel catalogues eight instances of putatively protected activity in the run-up to his 2018 termination, including initially informing his supervisors of Holland's concerns regarding Casey prior to her February 2018 complaint and each interview with HR pursuant to that investigation. Dusel also contends that his various pretermination complaints to FM Global, in which he alleged the company was retaliating against him (e.g., by relocating the HBM management team to FM Global's Rhode Island headquarters), themselves qualify as opposition to practices forbidden under Massachusetts antidiscrimination statute. In each of these instances, Dusel claims that he has provided adequate evidence of protected conduct -- with sufficient temporal proximity to his termination to permit an inference of retaliation -- such that the district court's grant of summary judgment was in error.

- 23 -

We need not resolve the disputes regarding which of Dusel's actions and statements constitute protected activity under Massachusetts law because, even assuming that those questions were to be resolved in his favor, we conclude that he has not met his burden at the subsequent stages of the McDonnell Douglas framework, wherein he must present evidence that would support a finding of a causal nexus between the protected conduct and his termination (to round out his prima facie case) and, subsequently, that FM Global's proffered legitimate, nondiscriminatory reasons for his termination were pretextual. See Psy-Ed Corp., 947 N.E.2d at 530; Verdrager, 50 N.E.3d at 800. In practice, these questions tend to blend into one another because, "for retaliation claims, [the] third element of [the] prima facie case and [the] third McDonnell Douglas stage are 'not easily distinguishable.'" Soto-Feliciano v. Villa Cofresí Hotels, Inc., 779 F.3d 19, 32 (1st Cir. 2015) (quoting Wells v. Colo. Dep't of Transp., 325 F.3d 1205, 1218 (10th Cir. 2003)); see also id. (moving "directly to see whether [plaintiff] has raised a genuine issue of material fact that the defendants' stated grounds for firing him were in fact a pretext for retaliatory animus" because "[i]f he has met this showing, then he necessarily has met the lesser burden that he bears at the prima facie stage of showing a causal connection between his protected conduct and the decision to fire him"). As such, we assess whether Dusel can establish that FM Global's articulated

rationale for the adverse employment actions was pretext masking a retaliatory animus.

For many of the same reasons we have rehearsed supra regarding the age-discrimination claim, we hold that Dusel cannot establish said pretext. As before, FM Global has proffered legitimate, nondiscriminatory reasons for Dusel's termination, viz., Dusel's violation of company policy vis-à-vis his use of the company's cell phone lines, his apparent attempts to conceal said behavior from FM Global investigators, and his after-hours visits to company facilities which led FM Global to conclude he had been engaging in food theft.[7]

In attempting to demonstrate causality and pretext, Dusel claims that the "close temporal proximity between events" and his "significant track record of positive

---

[7] While Dusel primarily focuses on his September 2018 termination, he also contends that FM Global's March 2018 decision to relocate HBM's senior staff to Rhode Island and reorganize the company's reporting structure, his May 2018 performance review (in which he received a "Meets Expectations" rating), and FM Global's investigations in July and August 2018 of Dusel's potential misconduct also constitute retaliation. FM Global disputes that these actions can plausibly be considered retaliatory in nature, offering evidence that the investigations into Dusel's cell phone and the cafeteria use arose independently from an unrelated investigation and that the Rhode Island relocation and attendant managerial changes -- which impacted multiple members of HBM's management team, not Dusel alone -- were not punitive in nature, but intended to increase cohesion and oversight in light of FM Global's conclusion that Dusel could not manage his staff. By any measure, these, too, constitute legitimate and nondiscriminatory reasons for FM Global's actions.

performance . . . give an inference of causal connection from his protected activity to his termination."

We are unpersuaded. While circumstantial evidence of temporal proximity between a protected activity and an adverse employment action can, in some cases, give rise to an inference that an employer's stated basis for the decision was pretext masking for retaliatory animus, that evidence must be considered alongside the rest of the summary judgment record. See Psy-Ed Corp., 947 N.E.2d at 534 n.31 ("It is true that . . . [t]iming and sequencing of events may, depending on the facts of a case, be sufficient to raise an inference of causation, and although that inference may be overcome by the defendant's contrary evidence, it also may become the basis of the plaintiff's proof that retaliation was in fact determinative." (internal citations omitted)).

Here, even if his apparent opposition to the conclusion of the 2015 investigation and alerting his superiors to Casey's complaints in February 2018 qualify as protected conduct, and even if (more dubiously) Dusel's informal complaints to FM Global management in April and June 2019 alleging retaliation themselves qualify as protected activities, we conclude that no reasonable juror on the facts of this case could infer that FM Global's stated basis for Dusel's termination was pretextual based on the time that elapsed between those events and his September 2018 termination. For one thing, FM Global has produced evidence --

uncontradicted by Dusel -- showing that Dusel's alleged misconduct came to light as a result of a separate matter involving separate employees, and in closer proximity to Dusel's termination than Dusel's last claimed protected activity. For another, and as we have already explained in connection with his age discrimination claim, Dusel has not presented other evidence that would allow a reasonable factfinder to conclude that FM Global's proffered basis for his termination is "so implausible that [FM Global] more likely than not does not believe it." Wayfair, 27 F.4th at 80. We see "no reason to reach a different conclusion" as to the state of the record in connection with Dusel's retaliation claim, Soto-Feliciano, 779 F.3d at 32, and he has provided none.

In consequence, we are unable to see how temporal proximity alone would allow a reasonable juror to infer that FM Global's stated reason for firing Dusel was pretext for its retaliatory animus toward him. By the same token, we are also unpersuaded by Dusel's gesture toward his track record of positive previous performance, as that evidence does not bear on FM Global's evidence as to its subsequent discovery of his misconduct -- which forms the basis of its legitimate, nondiscriminatory rationale for his termination.

Thus, as with the age-discrimination claim, Dusel has not marshaled evidence evincing a genuine dispute of material fact as to whether FM Global's adverse employment actions were

pretextual and retaliatory in nature. We therefore agree with the district court that "Dusel has not presented evidence from which a reasonable jury could infer that FM Global's articulated reasons for his discharge did not form the real basis for its employment decision." Dusel, 2021 WL 2953322, at *8.

## B. The District Court Did Not Err in Denying Dusel's Evidentiary Motions

Dusel lastly claims that the district court erred in denying certain of his evidentiary motions. Specifically, he contests the denial of his motion to strike the affidavits of Robert Fitzpatrick, Erik Waal, and Kevin Ingram; his motion to strike certain paragraphs from FM Global's statement of undisputed material facts; and his motion to exclude certain after-acquired evidence.

### 1. Standard of Review

We begin by emphasizing that we seldom disturb the district court's rulings on evidentiary issues. "Only rarely -- and in extraordinarily compelling circumstances -- will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." Freeman, 865 F.2d at 1340. "We review challenges to a district court's discovery determinations under an abuse of discretion standard." Pina v. Child.'s Place, 740 F.3d 785, 790 (1st Cir. 2014). "Accordingly, we 'will intervene in

such matters only upon a clear showing of manifest injustice, that is, where the lower court's discovery order was plainly wrong and resulted in substantial prejudice to the aggrieved party.'" Id. at 791 (quoting Dennis v. Osram Sylvania, Inc., 549 F.3d 851, 860 (1st Cir. 2008)). "At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61; see also Tersigni v. Wyeth, 817 F.3d 364, 369 (1st Cir. 2016) ("We may affirm in spite of an erroneous evidentiary ruling if the error was harmless, meaning that 'it is highly probable that the error did not affect the outcome of the case.'" (quoting McDonough v. City of Quincy, 452 F.3d 8, 19-20 (1st Cir. 2006))).

**2. Motion to Strike Affidavit of Robert Fitzpatrick**

FM Global proffered an affidavit of Robert Fitzpatrick, Information Security Specialist at FM Global, in support of its motion for summary judgment. In it, Fitzpatrick stated that after Dusel was terminated and pornographic materials were discovered within his paper files, FM Global asked him to conduct an "in-depth review of the[] contents" of Dusel's computers, cell phones, and other storage devices. He stated that in his review of Dusel's electronic devices, he found over 190,000 images and several thousand videos that were sexually explicit. He estimated that it would have taken at least a thousand hours to download said content and that it was the largest cache of such material that he had

seen outside of his career in law enforcement. Dusel moved to strike said affidavit. The district court denied the motion to strike, holding that Fitzpatrick's affidavit did not contain expert opinions and that Fitzpatrick was disclosed in FM Global's discovery responses.

Dusel argues that the district court abused its discretion by denying his motion to strike Fitzpatrick's affidavit for two reasons, which are substantially the same arguments that he advanced below. First, he argues that the affidavit contained expert opinions although Fitzpatrick was not disclosed as an expert. According to Federal Rule of Evidence 701, opinion testimony by a lay witness must be limited to testimony that is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Dusel argues that Fitzpatrick's additional commentary on the cache of pornographic material -- specifically, the amount of time it would have taken to download and his comparison to what he saw during his career in law enforcement -- veers into the realm of expert testimony. Second, Dusel argues that FM Global failed to disclose Fitzpatrick as a witness in its required initial disclosures under Federal Rule of Civil Procedure 26(a) and that FM Global is

therefore barred from using his testimony in support of its summary judgment motion per Federal Rule of Civil Procedure 37(c).

Even assuming arguendo that the Fitzpatrick affidavit contained unqualified expert opinion and that Fitzpatrick was not properly disclosed as a witness for the purposes of Rule 26(a), any such errors are harmless as neither the district court's holding nor our de novo review relies on Fitzpatrick's description of the sexually explicit material found on Dusel's computer or his additional commentary.  Instead, both rely on the other grounds for termination elucidated in the record which we have described in detail supra.  "Our harmlessness inquiry is whether . . . admission of the evidence affected plaintiff's substantial rights.  The central question is whether this court can say with fair assurance that the judgment was not substantially swayed by the error." Gay v. Stonebridge Life Ins. Co., 660 F.3d 58, 62 (1st Cir. 2011) (quoting Rubert-Torres v. Hosp. San Pablo, Inc., 205 F.3d 472, 480 (1st Cir. 2000)).  In this case, we can say with such assurance that neither the district court's judgment nor our de novo review was affected by any alleged error as neither court relied on the evidence that Dusel disputes.  As a final point, we note that the affidavits of Erik Waal and Kevin Ingram, both of which were allowed into the summary judgment record and neither of which are sufficiently challenged on appeal as we hold

infra, also discussed the sexually explicit material found on Dusel's computer that the Fitzpatrick affidavit discusses.

**3. Motion to Exclude Certain After-Acquired Evidence**

Dusel's second evidentiary argument concerns the same cache of pornographic and sexually explicit materials described above. At the district court, Dusel moved to exclude this evidence, arguing that it was discovered after his termination and is therefore irrelevant and presented a risk of unfair prejudice. The district court rejected this argument, finding that the evidence qualified as after-acquired evidence which could be admitted to assess damages but not liability.

On appeal, Dusel again argues that the evidence was irrelevant as it was discovered after he was terminated and therefore is not relevant to the reasons for his termination. He also argues that the district court improperly classified the evidence as after-acquired evidence.

"Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." McKennon v. Nashville Banner Publ'g Co., 513 U.S. 352, 362-63 (1995). Such evidence, however, is not relevant to the employer's liability but is only admissible to determine damages, as certain remedies for improper termination

may be limited based on after-acquired evidence. See Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 101 (1st Cir. 1997). We agree with FM Global and the district court that, based on the facts of the instant case, the threshold showing of severity has been met. We see no abuse of discretion in the admission of the after-acquired evidence as its admission was not plainly wrong. Further, because no claims survive summary judgment and FM Global has voluntarily dismissed any counterclaims, there is no prejudice to Dusel as this case will not reach the damages portion of adjudication.

**4. Motion to Strike Affidavits of Erik Waal and Kevin Ingram; Motion to Strike Certain Paragraphs from FM Global's Statement of Undisputed Material Facts**

Finally, Dusel argues that the district court erred in denying his motion to strike certain paragraphs from FM Global's statement of undisputed material facts, and that it also erred in denying his motion to strike FM Global's affidavits of Erik Waal and Kevin Ingram. However, Dusel develops no real argument on either of these points. As to the statement of undisputed material facts, Dusel provides us with the rule for such statements, Massachusetts Local Rule 56.1, and states that the denial of his motion "flies in the face of the intention and spirit of [Massachusetts Local Rule] 56.1" and therefore was an abuse of discretion. But, he provides no relevant caselaw or other support for this argument. Therefore, we deem said argument waived. See

United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

So too goes Dusel's argument on appeal that the district court abused its discretion by denying his motion to strike the affidavits of Kevin Ingram and Erik Waal.  Dusel again sets forth the standard, citing Federal Rule of Civil Procedure 56(c)(4) as applicable to affidavits at the summary judgment stage, and then proceeds to state that his motion to strike was "improperly denied" and that reversal is merited based on abuse of discretion. However, Dusel again fails to explain how the district court's denial was an abuse of discretion or provide any support for his conclusions.  "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."  Id.  Accordingly, we also consider this argument waived.

### III. Conclusion

The judgment of the district court is

**AFFIRMED**.